JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD BRANCACCIO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>KNAUF INSULATION, INC.; KNAUF INSULATION USA; KNAUF INSULATION, GMBH; KNAUF INSULATION; and DOES 1–100,<br><br>Defendants. | Case No.: CV 20-01439-CJC(AGRx)<br><br>ORDER GRANTING PLAINTIFF'S MOTION TO REMAND [Dkt. 12] |

## I. INTRODUCTION

Plaintiff Richard Brancaccio filed this wage-and-hour class action against Defendants Knauf Insulation, Inc. ("Knauf"), Knauf Insulation USA, Knauf Insulation,

GMBH, Knauf Insulation, and unnamed Does in Los Angeles County Superior Court. (Dkt. 1-2 [Complaint, hereinafter "Compl."].) Knauf removed to this Court. (Dkt. 1 [Notice of Removal, hereinafter "NOR"].) Before the Court is Plaintiff's motion to remand. (Dkt. 12 [hereinafter "Mot."].) For the following reasons, that motion is **GRANTED**.[1]

## II. BACKGROUND

Plaintiff allegedly worked for Defendants "as an hourly-paid, non-exempt employee in the positions of production associate, quality assurance, and backup line technician, from approximately January 2016 to approximately January 27, 2019." (Dkt. 11 [hereinafter "FAC"] ¶ 21.) Plaintiff's final base rate was $18.34 per hour. (*Id.*)

On January 3, 2020, Plaintiff filed this putative class action against Defendants in Los Angeles County Superior Court. In his original Complaint, Plaintiff asserted nine causes of action under California's Labor Code for (1) unpaid overtime wages, (2) unpaid meal period premiums, (3) unpaid rest period premiums, (4) unpaid minimum wages, (5) final wages not timely paid, (6) untimely wages during employment, (7) non-compliant wage statements, (8) failure to keep accurate payroll records, and (9) unreimbursed business expenses, as well as a tenth cause of action for (10) violations of California's Unfair Competition Law. In February 2020, Knauf filed a Notice of Removal. Knauf asserts that this Court has jurisdiction over the dispute pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). (NOR ¶ 8.) Alternatively, Knauf claims that the Court has federal question jurisdiction because the action "involves valid and applicable collective bargaining agreements pursuant to

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. *See* Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing set for April 13, 2020 at 1:30 p.m. is hereby vacated and off calendar.

Section 301 of the Labor Management Relations Act, as well as purportedly concerted action by employees covered under the National Labor Relations Act." (*Id.* ¶ 9 [citations omitted].)

After removal, Plaintiff filed the operative First Amended Complaint ("FAC"). In it, he withdraws the first, sixth, and eighth causes of action—for unpaid overtime wages, untimely wages during employment, and failure to keep accurate payroll records—from the original Complaint. (*See* FAC ¶¶ 49–103.) The remaining seven causes of action appear unchanged. (*See id.*) Plaintiff asserts these claims on behalf of a proposed class of "[a]ll current and former hourly-paid or non-exempt employees who worked for any of the Defendants within the State of California at any time during the period from January 3, 2016 to final judgment and who reside in California." (FAC ¶ 16; *see* Compl. ¶ 16.)

Plaintiff alleges broadly that "Defendants engaged in a pattern and practice of wage abuse against their hourly-paid or non-exempt employees" that "involved, *inter alia*, failing to pay them for all regular wages earned and for missed, short, late, and/or interrupted meal periods and rest breaks in violation of California law." (FAC ¶ 27.) The boilerplate allegations assert that Defendants failed to properly compensate employees, forced them to work through required breaks, and failed to keep accurate records. (*See id.* ¶¶ 22–48.) Plaintiff has not alleged any specific facts about Defendants' practices and policies or the frequency of the alleged violations. (*See id.*)

## III.  ANALYSIS

"Federal courts are courts of limited jurisdiction," possessing "only that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (internal quotations omitted). A civil action brought in state court may only be removed by the defendant to a federal district court if the action could have been brought there

<mark>-3-</mark>

originally. 28 U.S.C. § 1441(a). The removing party has the burden of establishing federal jurisdiction. *See id.* In the instant motion, Plaintiff challenges this Court's CAFA jurisdiction and federal question jurisdiction. The Court addresses each challenge in turn.

### A. CAFA Jurisdiction

CAFA provides original federal jurisdiction over class actions in which (1) the amount in controversy exceeds $5 million, (2) there is minimal diversity between the parties, and (3) the number of proposed class members is at least 100. 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B). "Congress designed the terms of CAFA specifically to permit a defendant to remove certain class or mass actions into federal court. . . [and] intended CAFA to be interpreted expansively." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). The Supreme Court has also held that "no antiremoval presumption attends cases invoking CAFA" because CAFA was enacted to facilitate federal courts' adjudication of certain class actions. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 550 (2014). Under CAFA, a defendant's notice of removal must contain a "short and plain statement of the grounds for removal." *Dart*, 135 S. Ct. at 553.

Plaintiff contends that this case must be remanded because Knauf has not properly established the amount in controversy.[2] The Court agrees. "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Id.* at 554. However, if the asserted amount in controversy is contested after removal, "[e]vidence establishing the amount is required." *Id.* at 554. "In such a case, both sides submit proof and the court decides, by a preponderance of the

---

[2] Plaintiff does not dispute that the other two CAFA requirements—minimal diversity and minimum class size—have been met. (*See generally* Mot.) Plaintiff has diverse citizenship from Defendants, and records show that Defendants employed over 100 qualifying class members. (*See* NOR ¶¶ 13–28.)

evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* at 550. Ultimately, the defendants bear the burden of proving that the amount in controversy is met. *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 978 (9th Cir. 2013). "Under this system, CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." *Ibarra*, 775 F.3d at 1198.

Because Plaintiff contests the amount in controversy, Knauf must provide evidence to show that the $5 million threshold is met. To fulfill that requirement, Knauf offers the declarations of Eric Long, the Plant Manager of its manufacturing plant in Shasta Lake, California, (Dkt. 1-14 [hereinafter "Long Decl."]), and Beth Muncie, its Senior Manager for Human Resources and Labor Relations, (Dkt. 15-1 [hereinafter "Muncie Decl."]). After reviewing human resource and payroll records, Muncie and Long found that Knauf employed 187 different full-time non-exempt employees in California between December 2015 and December 2019. (Muncie Decl. ¶ 6(h); Long Decl. ¶ 6(e).) They also found that, on average, Knauf employed 107 full-time non-exempt employees at any given time during this period. (Muncie Decl. ¶ 6(f); Long Decl. ¶ 6(c).) Finally, they found that in December 2015 the average hourly wage for these employees was $19.44. (Muncie Decl. ¶ 6(i); Long Decl. ¶ 6(f).)

Based on this evidence, Knauf estimates the amount in controversy as follows:

| Claim | Estimated Amount in Controversy |
|---|---|
| Unpaid Overtime Wages | $3,527,815.68 |
| Unpaid Meal Period Premiums | $440,976.96 |
| Unpaid Rest Period Premiums | $440,976.96 |
| Unpaid Minimum Wages Claim | $408,312.00 |
| Final Wages Claim | $354,585.60 |

| Failure to Provide Accurate Wage Statements | $272,850.00 |
|---|---|
| Failure to Maintain Records | $53,500.00 |
| **Subtotal (without attorney's fees and other claims)** | **$5,499,017.20** |
| Attorney's fees (20% of recovery) | $1,099,803.44 |
| **Subtotal (with 20% attorney's fees)** | **$6,598,820.64** |

(Dkt. 15 [Knauf's Opposition to Mot., hereinafter "Opp."] at 18.) As this chart shows, Plaintiff's overtime wages claim accounts for more than half of the estimated amount in controversy—approximately $3.5 million. Because this figure relies on unsupported and unreasonable assumptions, the Court finds that Knauf has failed to carry its burden.[3]

To estimate the amount in controversy for Plaintiff's overtime wage claim, Knauf assumed that, during the relevant period, every putative class member worked *five hours* of unpaid overtime every workweek. (*See* Opp. at 15.) Knauf has not presented any evidence to support or contextualize this assumption. Indeed, Long and Muncie's declarations do not include any information about Knauf's overtime practices or policies. Instead, Knauf contends that this violation rate is a reasonable assumption based on the allegations in the Complaint. The Court disagrees.

As discussed above, Plaintiff has not alleged any details about the frequency or nature of the alleged overtime wage violations. (*See, e.g.*, Compl. ¶ 56 ["Defendants intentionally and willfully failed to pay overtime wages owed to Plaintiff and the other class members."].) This obviously created some ambiguity about the amount in controversy. In *Arias v. Residence Inn by Marriott*, the Ninth Circuit addressed exactly this issue. 936 F.3d 920 (9th Cir. 2019). It explained that that a removing party can

---

[3] Plaintiff's evidentiary objections to the Muncie and Long Declarations are **OVERRULED**. The underlying employment records fall under the business records exception to the hearsay rule. *See* Fed. R. Evid. 803(6). Plaintiff has not offered any evidence to suggest that the declarants' summaries of those records are unreliable or inaccurate. *See* Fed. R. Evid. 1003, 1006.

make "reasonable assumptions" about violation rates to estimate the amount in controversy for boilerplate wage-and-hour claims. *Id.* at 925. "[A]n assumption may be reasonable if it is founded on the allegations of the complaint." *Id.*

But Knauf's assumptions are not reasonable. In the Complaint, Plaintiff alleges broadly that Defendants engaged in a "pattern and practice" of "failing to pay [employees] for all regular and/or overtime wages earned." (Compl. ¶ 28; *see also* FAC ¶ 27.) This allegation simply does not support the assumption that employees worked *five hours* of unpaid overtime every week. *See Arias*, 936 F.3d at 925. This would be a dramatic and flagrant violation of California law—it assumes that, on average, *every* non-exempt employee worked one hour of unpaid overtime *every workday*. Nothing in the pleadings suggest that this is an exceptional or extreme case. Nor has Knauf offered any context or information about its overtime practices—*e.g.*, the average number of compensated overtime work by qualifying employees.

While Knauf need not "provide evidence proving [its] assumptions correct," the assumed violation rates must have "some reasonable ground underlying them" and "cannot be pulled from thin air." *Arias*, 936 F.3d at 925–27 (quoting *Ibarra*, 775 F.3d at 1199) (internal quotations omitted). A removing party can assume extreme violation rates only if supported by allegations in the pleadings. For example, in *Arias*, the Ninth Circuit found that the removing defendant reasonably assumed a 100% violation rate for a wage statement claim because plaintiffs alleged that "not one" of defendant's statements complied with the California Labor Code. *Id.* at 926. Conversely, courts generally reject extreme violation rates based solely on allegations that the violations were "routine." *See Sifuentes v. Roofline, Inc.*, 2020 WL 1303796, at \*2 (E.D. Cal. Mar. 19, 2020) (explaining that the removing defendant's "maximum assumptions fall short of the Ninth Circuit's guidance for reasonability"); *cf. Arias*, 936 F.3d at 925–27

(assumption of 1 rest break violation per week was reasonable when plaintiffs claimed "routine" violations).

This is a common issue in the Ninth Circuit—an employee-plaintiff files a boilerplate wage-and-hour class-action complaint in state court, and the employer-defendant removes under CAFA. *See, e.g.*, *Gant v. ALDI, Inc.*, 2020 WL 1329909 (C.D. Cal. Mar. 20, 2020); *Lopez v. First Student, Inc.*, 2019 WL 8137149 (C.D. Cal. Dec. 2, 2019); *Andrade v. Beacon Sales Acquisition, Inc.*, 2019 WL 4855997, at *4 (C.D. Cal. Oct. 1, 2019). Based on the Court's review, no district court has *ever* accepted an assumed violation rate of five hours per week based solely on an alleged "pattern and practice" of overtime wage violations. *Cf. Gant v. ALDI, Inc.*, 2020 WL 1329909, at *5 (C.D. Cal. Mar. 20, 2020) (assumption of one-hour unpaid overtime per workweek was reasonable when plaintiff alleged "pattern and practice"); *Cavada v. Inter-Cont'l Hotels Grp., Inc.*, 2019 WL 5677846, at *4 (S.D. Cal. Nov. 1, 2019) (same for two hours of unpaid overtime per workweek). Because there are no allegations or evidence that suggest this case is exceptional, the Court finds Knauf's assumption unreasonable.

Without this inflated estimate of Plaintiff's overtime wage claim, the amount in controversy falls short of $5 million. (*See* Opp. at 18.)[4] Accordingly, Knauf has not satisfied its burden of meeting this jurisdictional threshold, and the Court therefore lacks CAFA jurisdiction over this action. *See Arias*, 936 F.3d at 925.

//

//

---

[4] The estimated amount in controversy for the remaining claims is approximately $2 million, or $2.4 million with 20% attorney fees. (*See* Opp. at 18.) If Knauf had assumed a violation rate of one, two, or even three hours of unpaid overtime work per workweek, the cumulative amount in controversy would fall below $5 million. (*See id.* [22,684 employee workweeks * $19.44/hour * 1.5 (overtime premium) * 3 hours/week = $1,984,396.32].)

**B. Federal Question Jurisdiction**

Knauf has similarly failed to establish federal question jurisdiction. Federal courts have subject matter jurisdiction over cases "arising under" federal law. 28 U.S.C. § 1331. Generally, under the "well-pleaded complaint rule," cases arise under federal law only when "a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). An exception to the well-pleaded complaint rule occurs "when a federal statute wholly displaces the state-law cause of action through complete pre-emption." *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8 (2003). In these instances, cases asserting state law claims that fall within the scope of the preemption are removable under 28 U.S.C. § 1441 even though no federal claim expressly appears on the face of the complaint. *See id.* When a case is removed, the burden of establishing subject matter jurisdiction falls on the defendant, and the removal statute is strictly construed against removal jurisdiction. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Id.*

Knauf argues that it has a federal preemption defense under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and under Sections 7, 8, and 9 of the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 151–69. (*See* NOR ¶ 48.) Because neither defense appears on the face of the Complaint, the mere possibility that these laws could preclude liability is insufficient to confer federal jurisdiction. *See Valles v. Ivy Hill Corp.*, 410 F.3d 1071, 1075 (9th Cir. 2005) ("A federal law defense to a state-law claim does not confer jurisdiction on a federal court, even if the defense is that of federal preemption and is anticipated in the plaintiff's complaint."). Instead, the Court only has subject matter jurisdiction if some or all of Plaintiff's claims are "completely preempted" and "wholly displaced." *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8 (2003).

### 1. Labor Management Relations Act

Section 301 of the LMRA gives federal courts exclusive jurisdiction to adjudicate "[s]uits for violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a). Section 301 "mandate[s] resort to federal rules of law in order to ensure uniform interpretation of collective-bargaining agreements ['CBAs'], and thus to promote the peaceable, consistent resolution of labor-management disputes." *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 404 n.3 (1988). Accordingly, any suit "alleging a violation of a provision of a labor contract must be brought under § 301 and be resolved by reference to federal law." *See Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210 (1985). However, it is well settled that Section 301 does not preempt "nonnegotiable rights conferred on individual employees as a matter of state law." *Livadas v. Bradshaw*, 512 U.S. 107, 123 (1994). "Setting minimum wages, regulating work hours and pay periods, requiring paid and unpaid leave, protecting worker safety, prohibiting discrimination in employment, and establishing other worker rights remains well within the traditional police power of the states, and claims alleging violations of such protections will not necessarily be preempted, even when the plaintiff is covered by a CBA." *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1152 (9th Cir. 2019) (quotations omitted).

Courts in the Ninth Circuit apply a two-step approach to determine whether a state law claim is preempted by Section 301. "First, we ask whether the asserted cause of action involves a right that exists solely as a result of the CBA." *Id.* (quotations omitted). In other words, the first step considers whether the claim seeks to vindicate a right or duty created by the CBA. *See id.* If so, the claim is preempted and the analysis ends. *See id.* If not, courts proceed to the second step and consider "whether a plaintiff's state law right is substantially dependent on analysis of the CBA." *Id.* at 1153 (cleaned up).

A state law right is "substantially dependent" if it requires "interpreting," as opposed to simply "looking to," the CBA. *See id.*

Here, Plaintiff asserts claims based on nondiscretionary state law rights. Accordingly, his claims are only preempted if they are "substantially dependent on analysis of the CBA." *See Curtis*, 913 F.3d at 1153. In its Notice of Removal, Knauf asserts that a CBA "governed the terms and conditions" of Plaintiff's employment. (NOR ¶ 49.) However, Knauf has not identified which, if any, specific terms or conditions are relevant here and has not explained why the Court will need to "interpret" the CBA to assess Plaintiff's claims. In the instant motion to remand, Plaintiff argues that "[e]ven if the parties may need to refer to [CBAs] at some point to determine rates of pay or other policies governing the putative class employment, the Court will not be called to interpret the [CBAs]." (Mot. at 8.) Knauf does not respond to this argument in its Opposition, (*see* Opp. at 22–24), and the Court agrees with Plaintiff. "[W]hen the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *See Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994). Accordingly, the Court concludes that Knauf has not carried its burden of establishing federal preemption under Section 301 of the LMRA.

2. <u>National Labor Relations Act</u>

Section 7 of the NLRA protects employees' right "to self-organization, to form, join or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157. Section 8 of the NLRA prohibits unfair labor practices, including attempts "to interfere with, restrain, or coerce employees in the exercise of the rights" guaranteed by Section 7. *Id.* § 158(a)(1). In *San*

*Diego Building Trades Council v. Garmon*, the Supreme Court held that the NLRA preempts state laws and state law actions "[w]hen it is clear or may be fairly assumed that the activities that a State purports to regulate are protected by § 7 . . . or constitute an unfair labor practice under § 8." 359 U.S. 236, 244 (1959). The party claiming an action is preempted bears the burden of showing that the challenged activity is arguably prohibited by the NLRA. *See Int'l Longshoremen's Ass'n v. Davis*, 476 U.S. 380, 396 (1986).

Knauf's theory of NLRA preemption is vague and, frankly, hard to decipher. (*See* Opp. at 22 ["The Complaint was filed as a class action and raises questions regarding class and collective issues."].) As best the Court understands it, Knauf makes two separate arguments for preemption under the NLRA. First, Knauf contends that because this lawsuit involves "purportedly concerted action by employees," it is preempted by *Garmon*. (*See id.* [citing *Garmon*, 359 U.S. 236].) This argument is fatally vague and unsubstantiated. Knauf has not identified any "concerted action" nor any "challenged activities" protected or prohibited by the NRLA. (*See id.*) Reviewing the Complaint, the Court is at a loss to understand what allegations could possibly trigger *Garmon* preemption.

Second, Knauf argues that because Plaintiff seeks to assert claims on behalf of other employees, his claims are preempted by Section 9 of the NLRA. This argument falls flat. Section 9 gives the National Labor Relations Board ("NLRB") exclusive jurisdiction over disputes regarding the appointment of representative employees "for the purposes of collective bargaining." *Id.* § 159. By its plain terms, Section 9 does not apply here. In this action, Plaintiff seeks to vindicate *non-negotiable* rights created by state law. While he intends to assert claims on behalf of similarly-situated employees, his putative role as lead plaintiff does not involve "collective bargaining." *Id.* § 159. In other words, Plaintiff does not seek to renegotiate the terms of anyone's employment—

indeed, he no longer works for Defendants. As a matter of law, the Court concludes that Section 9 of the NLRA has no preemptive force in this action. Knauf has not identified any precedent or persuasive argument to the contrary. (*See* Opp. at 24.)

The test for "complete preemption" is demanding, and Knauf has not shown that it is satisfied here. *See In re Miles*, 430 F.3d 1083, 1088 (9th Cir. 2005) (explaining that "[t]he Supreme Court has construed only three federal statutes to so preempt their respective fields as to authorize removal of actions seeking relief exclusively under state law"). Accordingly, Knauf has not carried its burden of establishing federal question jurisdiction.

## IV. CONCLUSION

For the foregoing reasons, Knauf has not carried its burden to show that the Court has subject matter jurisdiction over this action under either CAFA or 28 U.S.C. § 1331. Accordingly, Plaintiff's motion to remand is **GRANTED**, and this case is hereby **REMANDED** to Los Angeles County Superior Court.

DATED: April 7, 2020

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE